IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 08-cv-00401-MSK-BNB

GREELEY-ROTHE LLC;
HERTZKE HOLSTEINS, LTD.;
RICK D. HERTZKE; and
KATHLEEN G. HERTZKE,

       Plaintiffs,

v.

ANADARKO E & P COMPANY LP, formerly known as RME Petroleum Company;
ANADARKO LAND COMPANY, formerly known as RME Land Corp.;
NOBLE ENERGY PRODUCTION, INC.; and
UNIOIL, INC.,

       Defendants.

---

## OPINION AND ORDER DENYING MOTION TO DISMISS AND DENYING MOTIONS FOR SUMMARY JUDGMENT

---

**THIS MATTER** comes before the Court on (1) the Plaintiffs Motion for Partial Summary Judgment **(#44)**, to which the Defendants responded **(#57)**, and the Plaintiffs replied **(#61)**; (2) Defendant Noble Energy Production, Inc.'s ("Noble") Motion for Summary Judgment on Plaintiff's First and Fourth Claims and on Noble's Mitigation Defense **(#45)**[1] and accompanying filings **(#48, 49, 50)**, to which the Plaintiffs responded **(#54)**, and Noble replied **(#63)**; (3) Defendant Unioil, Inc.'s ("Unioil") Motion to Dismiss for Lack of Case or

---

[1] Defendants Anadarko E & P Company, LP, Anadarko Land Company, and Unioil, Inc. join this motion to the extent it is applicable to the Anadarko mineral estate **(#47)**.

Controversy **(#46)**, to which the Plaintiffs responded **(#56)**, and Unioil replied **(#60)**; and (4) Defendants Anadarko E & P Company, LP, Anadarko Land Company's (collectively "Anadarko") Motion for Summary Judgment Concerning the Anadarko Mineral Property **(#47)** and accompanying filings **(#48, 49, 50)**,[2] to which the Plaintiffs responded **(#53)**, and Anadarko replied **(#64)**. Having considered the same, the Court **FINDS** and **CONCLUDES** the following.

## I. Jurisdiction

The Court exercises jurisdiction pursuant to 28 U.S.C. § 1332(a).

## II. Claims and Issues Presented

This case concerns a dispute between the Plaintiffs who are surface owners of certain real property, and the Defendants, who are owners and lessees of the underlying mineral rights. The Plaintiffs argue that the Defendants are obligated to drill any wells on the property directionally rather than vertically, and that the Defendants' vertical drilling has injured them.

The Plaintiffs assert five claims[3] that can be grouped into two categories. First, they argue that the Defendants are obligated under both the statutory and common law doctrines of accommodation to utilize directional drilling because it is a viable alternative to vertical drilling that significantly reduces the intrusion on the surface land. The Defendants dispute that they are obligated to drill directionally under either doctrine because application of the doctrine is precluded by statute and because the Plaintiffs have not demonstrated that vertical drilling

---

[2] These accompanying filings were filed in connection to both Noble's Motion for Summary Judgment **(#45)** and Anadarko's Motion for Summary Judgment **(#47)**.

[3] Specifically, the Plaintiffs bring five claims for relief: (1) violation of the statutory accommodation doctrine, Colo. Rev. Stat. § 34-60-127; (2) breach of contract/anticipatory repudiation under the Lease; (3) breach of the duty of good faith and fair dealing under the Lease; (4) violation of the common law accommodation doctrine; and (5) request for a declaratory judgment.

2

materially interfered with their use of the surface land.

Second, the Plaintiffs assert a breach of contract claim as third-party beneficiaries to the Lease. They argue that the Defendants breached the Lease by failing to obtain the consent of the Plaintiffs, as the surface owners, prior to drilling (or evidencing their intent to drill by seeking permits to drill) and by failing to pay damages to the Plaintiffs for the intrusion on the surface land. The Defendants argue that the Plaintiffs are not third-party beneficiaries to the Lease and that they have not breached the Lease.

All parties have filed motions for summary judgment. These implicate fundamental determinations of (1) whether the Plaintiffs have standing to pursue their claims against Unioil even though Unioil has not caused any damage to the Plaintiffs at this point; and (2) whether there are sufficient factual disputes to require a trial on each of the claims.

### III. Material Facts

For purposes of determination of these motions, only, the Court finds that the material facts are as follows.[4]

The surface rights and mineral rights for a parcel of real property located in Weld County, Colorado (the "Property") were severed by a Warranty Deed issued by Union Pacific Railroad Company dated June 20, 1905 (the "Deed'). Currently, the Plaintiffs own the surface rights to the Property and Anadarko owns the mineral rights. In pertinent part, the Deed specifies the rights of the owner of mineral rights in accordance with the following language:

> the right of ingress, egress and regress upon said land to prospect for, mine and

---

[4] These facts are either undisputed or have been construed most favorably to the non-movant. Pertinent disputed facts are either noted or addressed in the analysis section *infra*.

remove any and all such coal or other minerals[5], and the right to use so much of said land as may be convenient or necessary for the right-of-way to and from such prospect places or mines, and for the convenient and proper operation of such prospect places, mines, and for roads and approaches thereto or for removal therefrom of . . . coal, mineral, machinery or other material.

Anadarko leased the mineral rights to Pan American Petroleum (the "Lease"), who, in turn, assigned its rights to Defendants Noble and Unioil. The Lease provides in pertinent part:

Notwithstanding anything to the contrary in this lease contained, no well shall be drilled upon or into and no facilities shall be installed upon any lands in which Lessor owns the mineral rights only, until the consents of the surface owners have been obtained under written instruments satisfactory to Lessor. Lessor will endeavor to obtain such consents and the Lessee agrees to cooperate. Any payments which the Lessor elects to pay to the surface owners shall be paid by Lessor out of its royalty.

Lessee shall pay for all damage to surface owners' lands, buildings and growing crops caused by construction, operations or maintenance of facilities, shall bury all pipe lines below plow depth where they cross cultivated lands, shall construct gates where necessary for crossing fenced lands and keep the gates in repair and closed, and shall indemnify Lessor with respect to such obligation.

The Plaintiffs currently use the surface of the Property for agricultural purposes. They have begun the process of rezoning the Property to develop a portion of it with a 795-acre commercial and residential development called the Lake Bluff Development. The Plaintiffs have taken a number of steps toward development including submitting a Development Concept Master Plan to the City of Greeley and a Preliminary Planned Unit Development application to the City of Greeley. As explained *infra*, because rezoning is not complete, the Court limits itself to consideration of the Property's past and current use.

There are at least two methods by which oil and gas wells can be drilled - directionally and vertically. In vertical drilling, the wells are drilled straight down from the wellhead. This

---

[5] There is no dispute that "other minerals" applies to oil and gas.

results in wellhead locations being spaced approximately equidistantly across the Property's surface. In contrast, directional drilling allows the wells to be drilled at angles such that the bottoms of the wells are equally spaced throughout the surface but the wellheads are clustered together. The clustering of wellheads (and attendant setback area) results in a smaller surface footprint.

Under the Lease, Noble has drilled six[6] vertical wells and has obtained permits to drill additional wells. Prior to drilling the wells, Noble offered to drill the wells directionally upon the Plaintiffs payment of the difference in cost pursuant to Colo. Rev. Stat. § 24-65.5-101–105.[7] The Plaintiffs declined this offer. Unioil has obtained permits to drill five vertical wells from the Colorado Oil and Gas Conservation Commission. Unioil also offered to drill directionally upon the Plaintiffs' payment of the cost differential, but the Plaintiffs declined. Unioil has not drilled any wells at this time.

## IV. Analysis

### A. Unioil's Motion to Dismiss for Lack of Standing

Unioil argues that the Plaintiffs have no standing to assert any claims against it because it has not drilled any wells on the Property. Article III of the United States Constitution limits federal courts to the determination of cases and controversies. As part of this requirement, a plaintiff must have standing to sue, which requires (I) a concrete and particularized injury, either actual or imminent; (ii) fairly traceable to the defendant's challenged behavior; and (iii) capable

---

[6] There appears to be some dispute as to how many wells Noble has drilled on the Property. Anadarko alleges that Noble has drilled three vertical wells on the Property while Noble contends that it has drilled six wells. Such dispute, however, is immaterial for purposes of this Order as it is clear that Noble has actually drilled some wells under the Lease.

[7] The details of this statute are discussed *infra*.

of being redressed by a favorable ruling.  *See Davis v. Federal Election Comm'n.*, 128 S.Ct. 2759, 2768 (2008) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  An injury need not be actualized to grant standing; so long as a threat of injury is real, immediate, and direct, standing exists.  A plaintiff must demonstrate sufficient standing as to each claim it seeks to press, and for each form of relief that is sought.  The proof necessary to establish standing mirrors the stage of the litigation—that is, at the pleading stage, general factual allegations of injury may suffice, as the Court must treat those factual allegations as true, but more detailed proof of injury may be necessary as the case progresses.  *See Lujan*, 504 U.S. at 561.

In this case, Unioil argues that because it has not actually commenced construction of any wells on the Property, the Plaintiffs have not suffered any injury sufficient to confer standing on them.  The Plaintiffs respond that Unioil's procurement of the permits to drill specific wells at specific locations is sufficient to satisfy the injury requirement of standing.  Unioil replies that the permits do not create a certainty of impending drilling and that its decision to drill depends on market conditions.

The Court finds that the Plaintiffs allege that any drilling on the Property will result in their loss of the use of a portion of the surface land and have requested future relief in the form of a declaration that the Defendants cannot use issued permits to vertically drill.  Because Unioil holds permits to drill, there is the possibility of a particularized injury, sufficient for purposes of standing.  *See Whitmore v. Arkansas*, 495 U.S. 149, 155–56 (1990).  As to whether it is actual or imminent, as opposed to conjectural or hypothetical, because the permits Unioil currently holds authorize it to commence drilling at any time without taking any additional steps, the threat of

injury is real, immediate, and direct.[8] Accordingly, Unioil's Motion to Dismiss for Lack of Standing is **DENIED**.

## B. Motions for Summary Judgment

### 1. Standard of Review

This case involves cross-motions for summary judgment, which present peculiar problems. The Tenth Circuit has repeatedly directed that cross-motions for summary judgment be determined independently. *See Atlantic Richfield Co. v. Farm Credit Bank of Wichita,* 226 F.3d 1138, 1148 (10th Cir. 2000); *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) ("Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another."). This is because "determination of whether there is a genuine dispute as to a material factual issue turns upon who has the burden of proof, the standard of proof and whether adequate evidence has been submitted to support a *prima facie* case or to establish a genuine dispute as to material fact[.]" *In re Ribozyme Pharmaceuticals, Inc., Securities Litig.*, 209 F. Supp.2d 1106, 1112 (D. Colo. 2002). Accordingly, the Court addresses the Defendants' Motions separately from the Plaintiffs' Motion.

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and

---

[8] The Court finds no reason to decline to exercise jurisdiction over the Plaintiffs' claims under the Declaratory Judgment Act. *See Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494–95 (1942) (noting that a court is not under any compulsion to exercise jurisdiction under the Declaratory Judgment Act). Indeed, resolution of the claims currently before the Court would serve to clarify or settle the legal relations between the parties and terminate the uncertainties between the parties with respect to the rights and duties of the parties moving forward in their use of the surface of the Property at issue. *See State Farm Life & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994).

a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proven for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

When the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(e). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

When the movant does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If

the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### 2. The Defendants' Motions with regard to Claims 1 and 4 - Statutory and Common Law Accommodation

In Claims 1 and 4, the Plaintiffs seek an award of damages for past vertical drilling and an injunction requiring future directional drilling. These requests are brought pursuant to the Colorado's common law of accommodation of surface holder rights and Colo. Rev. Stat. § 34-60-127. As to the common law claim, Plaintiffs bear the burden of proof. Under the statutory provision, they have a burden of coming forward with an initial showing.

The Defendants' Motions for Summary Judgment raise number of issues, some of which the Court will address.[9] The Defendants assert that based upon the undisputed facts, they are entitled to judgment as a matter of law for two reasons: the Deed language precludes the application of the common law doctrine of accommodation and the statutory codification, and Colo. Rev. Stat. § 24-65.5-101–105 supercedes the application of the statutory and common law accommodation doctrines. In addition, the Defendants argue that if either the common law or statutory accommodation provisions apply, the Plaintiffs have not demonstrated a *prima facie* showing that the vertical drilling materially interferes with their use of the land. In analyzing these contentions it is important to begin with the common law doctrine of accommodation and

---

[9] Due to its peculiarly factual nature, failure to mitigate damages will not be addressed in this Opinion and Order.

related statutes.

Colorado's common law of accommodation is reflected in the Colorado Supreme Court's decision in *Gerrity Oil & Gas Corp. v. Magness*, 946 P.2d 913, 927–29 (Colo. 1997). *Gerrity* explained that severed mineral rights lack value unless the mineral estate owner can access the surface estate and use a portion of the surface to access and develop the severed mineral interest. Thus, the rule of reasonable surface use permits an owner of a mineral estate to use the surface as is reasonable and necessary to develop the minerals as long as such use does not interfere with or damage the surface owner's rights in the surface. The relative rights of each estate owner, however, may create tension between the two estates. Accordingly, each owner is required to have "due regard" for the rights of the other in making use of its respective estate, *i.e.*, mineral owners must "accommodate surface owners to the fullest extent possible consistent with their right to develop the mineral estate." The degree of accommodation necessary varies depending on the surface uses and the alternatives available to the mineral rights owner, but when operations of the mineral rights owner preclude or impair the uses of the surface owner, the mineral rights owner is required to adopt reasonable alternatives that are available.

The codification of at least a portion of this doctrine occurred in 2007, when the Colorado Legislature enacted Colo. Rev. Stat. § 34-60-127.[10] Subsection (1)(a) requires an oil and gas operator to conduct its operations in a manner that accommodates the surface owner by "minimizing intrusion upon and damage to the surface of the land." This standard is statutorily

---

[10] Although the statutory provision appears to be substantially similar to the common law doctrine, it does not appear that the Colorado Legislature intended to displace the common law doctrine. Indeed, the statute provides that the provision shall not "preclude or impair any person from obtaining any and all other remedies allowed by law." This suggests that Plaintiffs may seek relief under either doctrine.

defined as

> selecting alternative locations for wells, roads, pipelines, or production facilities, or employing alternative means of operation, that prevent, reduce, or mitigate the impacts of the oil and gas operations on the surface, where such alternatives are technologically sound, economically practicable, and reasonably available to the operator.

*See* Colo. Rev. Stat. § 34-60-127(1)(b). The statute further provides that it shall not be construed to prevent an operator from entering upon and using the surface area that is reasonable and necessary to explore for, develop, and produce oil and gas nor to abrogate or impair a contractual provision binding on the parties that expressly provides for the use of the surface for the conduct of oil and gas operations or that releases the operator from liability for the use of the surface. *See* § 34-60-127(1)(c)–(d).

Subsection (3)(a) establishes a shifting burden of proof for claims brought under the statute. First, the plaintiff/surface owner must demonstrate that the mineral owner's use of the surface "materially interfered" with the surface owner's use of the surface. If the plaintiff makes such showing, then the burden shifts to the defendant/mineral owner to show that it met the standard set out in the statute, *i.e.*, minimized intrusion upon and damage to the surface. The defendant may also assert, as an affirmative defense, that it conducted the oil and gas operations in accordance with a regulatory requirement, contractual obligation, or land use provision, that is specifically applicable to the alleged intrusion or damage. *See* § 34-60-127(3)(b).

For "qualifying surface developments", however, Colo. Rev. Stat. § 24-65.5-101–105, *inter alia*, displaces the accommodation doctrine and requires that the surface owner pay for the extra cost of directional drilling, A "qualifying surface development" is a development larger than 160-acres for which an "application for development" has been made. An "application for

11

development" is further defined as "any application for general development plans and special use permits or any applications for zoning or rezoning to a planned unit development that would change or create lot lines where such applications are in anticipation of new surface development, but does not include amendments to an urban growth boundary, applications for annexation and zoning, applications for zoning or rezoning that will not change lot lines . . . ."

The Court turns first to whether the Plaintiffs' claims under either accommodation doctrine are precluded by the Deed. As to the statutory doctrine, the question is whether the Deed's reservation of rights for the mineral owner "expressly provides for the use of the surface for the conduct of oil and gas operations or that releases the operator from liability for the use of the surface" under subsection (1)(d). The Court finds that the Deed's grant to the mineral owner of "the right to use so much of said land . . . for the convenient and proper operation of" mineral development expressly provides for the use of the service for oil and gas operations in some capacity under subsection (1)(d). Such a determination, however, does not preclude application of the accommodation doctrine all together as the statute still requires an operator to accommodate the surface owner. Rather, the existence of a contractual provision regarding the use of the surface land provides the standard of care by which the Defendants' actions are adjudged.[11] As to whether the Defendants abided by this standard of care, there remain genuine issues of fact, namely, whether vertical drilling was necessary for the "convenient and proper" use of the land to develop the mineral rights or whether directional drilling could have been utilized such that the surface area used by the mineral owner was lessened.

---

[11] Such a holding is not inconsistent with *Zeiler Farms, Inc. v. Anadarko E & P Co. LP*, 2009 WL 890716, at *4(D. Colo. Mar. 31, 2009), which determined that a surface owner's agreement provided the standard of care for the mineral owner's use of the surface land.

This same reasoning applies to the common law doctrine. Under the common law, mineral owners are required to accommodate surface owners "to the fullest extent possible consistent with their right to develop the mineral estate." Such a duty is necessarily subject to any agreement between the parties as such an agreement provides the scope of the mineral owner's right to develop the mineral estate. Accordingly, the claim boils down the same factual issues as in the statutory provision—was the mineral owner's use of the surface land consistent with its reserved right to use such land or did it exceed its rights.

Turning to the application of Colo. Rev. Stat. § 24-65.5-101, there are also factual issues. The Defendants argue that there is no dispute that the Plaintiffs' applications regarding its proposed commercial and residential development of the Property constitute "applications for development" and, therefore, that the development is a "qualifying surface development" such that the statute supercedes any accommodation doctrine and requires that the Plaintiffs pay for directional drilling. The Plaintiffs dispute whether the documents they have submitted fall within the statutory definition of an "application for development."

It is unclear what documents were submitted by the Plaintiffs, and what they were intended to do. These are material factual issues. Furthermore, even if the Property is ultimately deemed to be a "qualifying surface development", the statutory and common law accommodation doctrines remain applicable for the period of time before the Plaintiffs made an application for development that triggered the statute. Thus, entry of summary judgment is not appropriate.

The Court finally turns to the Defendants contention that the Plaintiff has not come forward with sufficient evidence to make a *prima facie* showing that the vertically drilled wells

materially interfere with the Plaintiffs' use of the surface land. The Plaintiffs have provided evidence, construed most favorably to them, that would show that vertical drilling increases truck traffic to and from the wells, requires more roads than would be necessary if the wells were clustered, creates more noise, increases the fire risk, and generally impacts the aesthetics of the land, as well as hampers the ability of the land to be farmed efficiently. These factual showings are sufficient to establish a *prima facie* case that vertical wells materially interfere with the Plaintiffs use of the land. Thus, a trial is necessary.

> 3. **The Defendants' Motions with regard to Claims 2 and 3: Breach of Contract/Anticipatory Repudiation and Breach of the Duty of Good Faith and Fair Dealing**

The Plaintiffs' claims for breach of contract/anticipatory repudiation and breach of the duty of good faith and fair dealing are premised upon the Lease between Anadarko, as the lessor, and Noble and Unioil, as lessees. The Plaintiffs argue that the Defendants breached the Lease by not obtaining their consent prior to drilling and by not paying surface damages for the drilling. These claims are necessarily premised on a finding that the Plaintiffs are third-party beneficiaries to the Lease. The Defendants have moved for summary judgment on these claims, arguing, among other things, that the Plaintiffs cannot demonstrate that they are third-party beneficiaries to the Lease.

Colorado law generally provides that a third-party can enforce the terms of an agreement to which he or she is not a party if the third-party is intended by the parties to the agreement to be a direct, not incidental, beneficiary of that agreement. *See Chandler-McPhail v. Duffey*, 194 P.3d 434, 437 (Colo. Ct. App. 2008). The intent of the parties need not be expressly stated in the

written agreement, but must be apparent from the terms of the contract and/or the surrounding circumstances. Here, the pertinent provision in the Lease is somewhat ambiguous; the plain language calls for the consent of the surface owner prior to any drilling, but it is not clear as to whether that consent is intended to benefit the surface owner or the lessor. This provision may be intended to give the surface owner a veto right on drilling, or it could be intended to protect the lessor from liability to the surface owner arising from the lessee's drilling. The intent of the parties (lessor and lessee) requires a factual, therefore evidentiary, determination.

It is likely that the evidence with regard to this issue, and damages if a cognizable breach is found will overlap the evidence presented with regard to Claims 1 and 4. Any failure to present a legally sufficient claim can be addressed in a Rule 50 motion or in the process of carefully crafting jury instructions.

### 4. The Plaintiffs' Motion (#44)

The Plaintiffs have also moved for summary judgment on their statutory accommodation and breach of contract/anticipatory repudiation claims. As discussed *supra*, there are genuine issues of material fact pertaining to all claims. A trial is required.

**IT IS THEREFORE ORDERED** that

(1) Defendant Unioil, Inc.'s ("Unioil") Motion to Dismiss for Lack of Case or Controversy **(#46)**, to which the Plaintiffs responded **(#56)** is **DENIED**.

(2) The Plaintiffs Motion for Partial Summary Judgment **(#44)** is **DENIED**.

(3) Defendant Noble Energy Production, Inc.'s ("Noble") Motion for Summary Judgment on Plaintiff's First and Fourth Claims and on Noble's Mitigation Defense **(#45)** is **DENIED**.

(4) Defendants Anadarko E & P Company, LP, Anadarko Land Company's (collectively "Anadarko") Motion for Summary Judgment Concerning the Anadarko Mineral Property **(#47)** is **DENIED**.

Dated this 31st day of March, 2010

                                        **BY THE COURT:**

                                        Marcia S. Krieger
                                        United States District Judge